UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNNE RUSHING,

        Plaintiff,                       Hon. Janet T. Neff

v.                                              Case No. 1:14-cv-0006-JTN-PJG

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      This is a social security action brought under 42 U.S.C. § 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for Supplemental Security Income (SSI) benefits. On September 1, 2010, plaintiff filed her application for benefits alleging a December 10, 2009, onset of disability. (Page ID 180-84). Her claims were denied on initial review. (Page ID 115-26). On June 27, 2012, she received a hearing before an administrative law judge (ALJ). (Page ID 70-112). On August 21, 2012, the ALJ issued a decision finding that plaintiff was not disabled. (Page ID 47-63). On November 19, 2013, the Appeals Council denied review (Page ID 28-30), and the ALJ's decision became the Commissioner's final decision.

      Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for SSI. She asks the court to overturn the Commissioner's decision on the following grounds: (1) that, in making her findings regarding plaintiff's residual function capacity (RFC), the ALJ erred in not giving controlling weight to

plaintiff's treating physician; (2) that the ALJ's findings regarding plaintiff's RFC was not otherwise supported by substantial evidence; and (3) that the ALJ failed to provide a proper hypothetical to the Vocational Expert (VE). (Plf. Brief at iii, 10, 14, 16, Dkt. 11, Page ID 552, 563, 567, 569; *see also* Reply Brief, Dkt. 13, Page ID 588-92).[1]

I conducted oral arguments on January 16, 2015. Having reviewed the record, and having considered the parties' written and oral submissions, I recommend that the Commissioner's decision be affirmed.

## Legal Standard

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility

---

[1] Plaintiff's argument regarding the propriety of the hypothetical presented to the VE is premised on her contention that the ALJ erred in defining her RFC. (Pltf. Br. at 16-17, Page ID 569-70). Given that the ALJ did not err in defining plaintiff's RFC, I need not address that argument.

determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854-55 (6th Cir. 2010).

A claimant must prove that she suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 1382c(a)(3)(A); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying this standard, the Commissioner has developed a five-step sequential analysis. *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis,

> [t]he claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

A claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past work through step four. *Jones v. Commissioner*, 336 F.3d at 474. At step five of the inquiry, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual function capacity (determined at step four) and vocational profile." *Id.*

## The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since September 1, 2010, the application date. (Op. at 3, Page ID 49). Plaintiff had the following severe impairments: "obesity; tendonitis (sp) of the right wrist; asthma;

gouty arthritis; dermatitis of the hands and feet; anxiety disorder; hypertension; dizziness and headaches; disorders of the cervical spine; major depressive disorder; mild degenerative arthropathy in the back; and mild osteoarthritis in the right knee." (*Id.*). The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments. (Op. at 4, Page ID 50). She found that plaintiff retained the residual functional capacity (RFC):

> to perform sedentary work as defined in 20 CFR 416.967(a) except requires the option to alternate between sitting and standing at will; no foot control operation; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, crouch, or kneel; never crawl; in jobs that allow the claimant to elevate her leg on a stool as needed six inches off of the ground; needs a hand held assistive device for uneven terrain or prolonged ambulation; no more than moderate exposure to extreme cold or heat; no more than moderate exposure to wetness or humidity; no more than moderate exposure to environmental irritants; avoid all use of/exposure to hazardous machinery; avoid all unprotected heights; work is limited to unskilled jobs as defined in the Dictionary of Occupational Titles with SVP levels 1 or 2 with simple, routine tasks that can be learned in approximately 30 days involving no more than simple work-related decisions with few workplace changes; and occasional, at most, interaction with the general public, co-workers, or supervisors.

(*Id.* at 7, Page ID 53). The ALJ noted that she had "given [plaintiff] every benefit of the doubt in greatly reducing [plaintiff's] residual function capacity to less than the full range of sedentary, with additional mental restrictions." (*Id.* at 8, Page ID 54). The ALJ found that plaintiff's testimony regarding the impact of the impairments on her ability to work was "not fully credible." (*Id.*). She determined that plaintiff was not

able to perform any of her past relevant work as a housekeeper or telephone solicitor. (*Id.* at 16, Page ID 62).

The ALJ considered the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were sedentary and unskilled occupations the person would be able to perform, including machine tender (2,000 jobs in Michigan) and assembler (1,500 jobs in Michigan), or inspector (1,000 jobs in Michigan). (*Id.* at 16-17, Page ID 62-63). The ALJ found that the VE's testimony was consistent with the information in the Dictionary of Occupational Titles, except that the testimony regarding sit and stand limitations was based on the VE's experience. (*Id.* at 17, Page ID 63). Based on the VE's testimony, the ALJ concluded that plaintiff is capable of performing work that exists in significant numbers in the national economy. (*Id.*). Accordingly, the ALJ held that plaintiff was not disabled. (*Id.*).

## Discussion

### I. The ALJ Did Not Err In Giving "Limited Weight" To Plaintiff's Treating Physician.

Plaintiff's treating source, Marguerite Saith, M.D., is a family practice physician.[2] On June 19, 2010, she provided a medical opinion regarding plaintiff's ability to do work-related activities. (Page ID 539-40). As the ALJ noted, Dr. Saith opined that plaintiff

---

[2]The Court was so advised by plaintiff's counsel during oral argument.

>   could lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and walk less than 2 hours; sit about 4 hours; requires the option to shift at will from sitting or standing/walking; will need to elevate her legs one third of the day; can never twist, stoop, crouch, or climb ladders; can rarely climb stairs; can do pushing and pulling subject to the above limitations; cannot do reaching over 100 degrees; should avoid even moderate exposure to all environmental irritants; and needs a cane.

(Op. at 15, Page ID 61 (citing Page ID 539-40)). In a July 2, 2012, statement (after the hearing), Dr. Saith opined that the level of elevation of plaintiff's legs "should be higher than her heart to have effective reduction of the swelling. Otherwise, if while sitting, she were elevating in a chair, level with her seat, that would be the best substitute." (Page ID 543).[3]

The ALJ gave "limited weight" to Dr. Saith's opinions, despite her status as a treating source, because "[her] opinions are extreme when compared to her treatment records, which do not reflect such significant limitations." (Op. at 15, Page ID 61). The ALJ noted, however, that she incorporated many of Dr. Saith's listed limitations, despite the lack of objective evidence to support them, in order to give plaintiff "every benefit of the doubt." (*Id.*).

Plaintiff contends that the ALJ erred in failing to give Dr. Saith's opinion controlling weight in determining plaintiff's RFC, particularly regarding the doctor's opinions that plaintiff needed to elevate her legs one third of the day, and that the level of elevation should be higher than her heart. (Plf. Brief. at 12-14, Page ID 565-67).

---

[3]The ALJ considered Dr. Saith's July 2, 2012, statement before making her decision. (*See* Op. at 15, Page ID 61).

Plaintiff argues, in essence, that the ALJ failed to cite any evidence to counter Dr. Saith's opinion; that the ALJ misinterpreted Dr. Saith's treatment records; and that other evidence, including the findings of R. Scott Lazzara, M.D., the Disability Determination Service (DDS) examiner.

The ALJ is responsible for assessing plaintiff's RFC. *See* 20 C.F.R. § 416.946(c). In making this assessment, the ALJ must consider the functional limitations resulting from plaintiff's medically-determinable impairments. SSR 96-8p (reprinted at 1996 WL 374184 (SSA July 2, 1996)). Plaintiff bears the burden, however, to establish that she has limitations beyond those set forth in the RFC. *See* 20 C.F.R. § 416.912(c); *Her v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors,

particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006). While the ALJ must consider these factors, she is not required to discuss each of them. *See Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011); *Mayfield v. Commissioner*, No. 1:12-cv-912, 2014 WL 1341923, at * 1 (W.D. Mich. Mar. 31, 2014) (collecting cases); *see also Hernandez v. Colvin*, 567 F. App'x 576, 584 (10th Cir. May 28, 2014) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

In this case, the ALJ provided good reasons for discounting Dr. Saith's opinion regarding plaintiff's need to elevate her leg. The ALJ concluded that the opinion was "extreme" when compared to the doctor's treatment records. (Op. at Page ID 61). "For example . . . [Dr. Saith] often reported that [plaintiff's] lower extremities were intact and did not describe[] any musculoskeletal limitations. Likewise, her treatment records do not reflect the claimant's need to elevate her legs, but rather these limitations were only offered in her opinions submitted in connection with [plaintiff's] attempt to obtain disability benefits." (*Id.*). A review of the record substantially supports the ALJ's findings. (*See* Page ID 360-96 (Office Treatment Records, 11/19/08 to 12/31/10); Page ID 415-44 (Office Treatment Records, 11/16/10 to 9/22/11); Page ID 523-38 (Office Treatment Records, 11/14/11 to 2/22/12)). Dr. Saith's failure to catalog any leg-elevation requirement in her treatment notes "calls into question whether [plaintiff] was in fact so restricted." *Essary v. Commissioner*, 114 F. App'x 662, 667 (6th Cir. 2004).

Moreover, a number of Dr. Saith's notes contradict her opinion regarding the leg-elevation requirement. On December 14, 2010, for example, Dr. Saith described Bell's palsy and left motor neuron facial palsy, but did not note any other musculoskeletal or neurological abnormality. (Page ID 427). In addition, Dr. Saith specifically noted that plaintiff's lower extremities were intact. (Page ID 427). On July 20, 2011, Dr. Saith noted that plaintiff had some pain on "tippy toeing on the right knee, but none on heel walking." (Page ID 420). The doctor also reiterated that plaintiff's lower extremities were intact "with no obvious difference in the right posterior knee noted, though [plaintiff] states that her knee locks and there is intermittent swelling with need to assess for right Baker's cyst." (Page ID 420).[4] On February 22, 2012, Dr. Saith described plaintiff's general appearance as alert, oriented, and in no acute distress; once again, the doctor did not list any musculoskeletal or neurological abnormalities. (Page ID 525, 526).

The ALJ's decision to give "limited weight" to Dr. Saith's opinion regarding leg elevation is also supported by other record evidence. Following a November 19, 2010, examination, DDS examiner R. Scott Lazzara, M.D., noted "no evidence of joint laxity, crepitance, or effusion"; finding instead warmth "with synovial thickening in the right

---

[4]A September 15, 2011, an MRI performed by Bronson Hospital on plaintiff's right knee was described as "essentially unremarkable . . . with only mild degenerative signal within the cartilage overlying the superior portion of the median patellar ridge (without discrete chondral loss) and a trace joint effusion." (Page ID 430). A September 20, 2011, X-ray of plaintiff's right ankle showed "[s]uspected tibiotalar joint effusion" with "mild lateral soft tissue swelling. . . . Alignment appears anatomic." (Page ID 412).

ankle with marked tenderness over the lateral compartment." (Page ID 335). Plaintiff "had no difficulty getting on and off the examination table, mild difficulty heel and toe walking . . . mild difficulty hopping on the left and was unable to on the right." (Page ID 335). The range of motion in plaintiff's left ankle was normal and slightly reduced in the right ankle. (Page ID 337). Her motor strength in her right ankle was 4/5. (Page ID 337). Dr. Lazzara noted that plaintiff walked with "a moderate right sided limp without the use of an assist device." (Page ID 337). Dr. Lazzara's only conclusions were ankle and back pain, and he simply recommended that "a cane would be helpful for pain control until she has been further managed." (Page ID 338).

During oral argument, plaintiff's counsel contended that the condition of plaintiff's ankle worsened after Dr. Lazzara's examination to the point of requiring leg elevation above the heart level for periods equal to at least one-third of the day. Like the ALJ, I find nothing in the record, either before or after Dr. Lazzara's examination, that mandates such a restriction.

While plaintiff cites Dr. Saith's January 12, 2011, notation that plaintiff had "increasing gout symptoms," (Plf. Brief at 13, Page ID 566 (referring to Page ID 426)), it does not alter the analysis here. Other than refilling several prescription medications, Dr. Saith's January 12, 2011, notes do not include any recommended treatment regimen, including leg elevation. (Page ID 426). Nor do the doctor's March and May 2011 notes, which reference "occasional" swelling of plaintiff's ankle, mention leg elevation. (Page ID 422, 424). Dr. Saith's notes regarding plaintiff's July 20, 2011, appointment, in which the doctor performed an "ankle check," make no mention of

ankle gout or ankle swelling; much less do they contain any suggestion of a need to elevate plaintiff's legs. (Page ID 420-21).

Accordingly, plaintiff has failed to meet her burden of establishing that any leg elevation restriction should have been included in the RFC, much less that it be at or higher than heart level. Moreover, even to the extent plaintiff has offered evidence of an ankle-related disability, this Court must affirm the ALJ's decision in light of the substantial evidence supporting it. *See Jones*, 336 F.3d at 477; *see also Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (The ALJ's decision must be affirmed as long an it is supported by substantial evidence, notwithstanding that there is substantial, or even preponderant evidence of disability.).

## II. The ALJ's Findings Regarding Plaintiff's RFC Is Supported By Substantial Evidence.

Plaintiff argues that four of the ALJ's findings in the RFC are unsupported by the record. These, she contends, includes: (1) that plaintiff need elevate her leg only "six inches off the ground," instead of "heart level or seat level"; (2) that plaintiff need only use her cane for "uneven terrain or prolonged ambulation," rather than "all of the time"; (3) that plaintiff could "occasionally" climb ramps or stairs, balance, stoop, crouch, or kneel; and (4) that plaintiff could "occasionally" interact with the general public, co-workers, and supervisors. (Plf. Brief at 14-16, Page ID 567-69). Plaintiff's arguments lack merit.

First, as demonstrated above, there is nothing in the record that mandates an RFC leg-elevation restriction at all, much less one at the heart or seat level. As the

ALJ noted, she chose to include some leg-elevation restriction, despite the lack of objective evidence supporting it, to give plaintiff "every benefit of the doubt." (Op. at 15, Page ID 61). To the extent the ALJ erred, it was in including the leg-elevation restriction at all, not in failing to expand it. But even so, any such error would not warrant reversal, as it does not prejudice plaintiff. *Cf. Bowen v. Commissioner*, 478 F.3d 742, 746 (6th Cir. 2007) ("Even if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." (citing *Wilson*, 378 F.3d at 546-47)).

With respect to plaintiff's physical limitations, state agency physician Shanthini Daniel, M.D., reviewed the record evidence and opined that plaintiff could occasionally balance, stoop, crouch, kneel, and climb ramps or stairs. (Page ID 122). The ALJ may rely on such opinions because state agency doctors are "highly qualified" medical experts "who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(I); *see also* 20 C.F.R. § 416.927(c)(6).

Moreover, the opinion is consistent with, and well supported by, the record as a whole. *See* 20 C.F.R. § 416.927(c)(4). Dr. Saith repeatedly examined plaintiff and indicated in a number of contemporaneous notes that her lower extremities were intact. (Page ID 370, 371, 373, 377, 420, 422, 424, 426, and 427). In addition, none of Dr. Saith's notes recorded any musculoskeletal or neurological abnormalities. (*See* Page ID 365, 370, 415-17, 420, 422, 424, 427, 526, 531, and 536). In fact, on June 24, 2010, some six months after the alleged onset of disability, Dr. Saith noted that

plaintiff's condition was "stable," and that she "can still work and participate in social activity." (Page ID 368).

The physical limitations, as defined in the RFC, are also consistent with the fact, as noted by the ALJ, that plaintiff received only routine and conservative treatment for her impairments, relying only on medication. (Op. at 9, Page ID 55; *see also* Page ID 543 (Dr. Saith's July 2, 2012, statement noting only that she had treated plaintiff's gouty arthritis with the use of prescribed medication)). There is no record that plaintiff received any injections or other treatment for her back and arthritis pain. (Op. at 9, Page ID 55). Nor does the record include any recommendation for surgery or a referral to a pain-management specialist. (*Id.*). Although plaintiff has limited financial resources, the record includes no reference to pain-management treatment at a free clinic, and plaintiff acknowledged having received Medicaid, at least intermittently, affording her more access to treatment. (*Id.*; *see also* Page ID 420 (Dr. Saith's July 20, 2011, note that plaintiff just received her Medicaid insurance)). The ALJ properly relied on these facts in reaching her decision regarding plaintiff's limitations. *See Curler v. Commissioner*, 561 F. App'x 464, 473 (6th Cir. 2014)*; McKenzie v. Commissioner*, No. 99-3400, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (claimant's "history of conservative treatment for his alleged disabling pain" is "probative evidence" that he was not disabled); *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing Credibility of an Individual's Statements*, SSR 96-7p (reprinted at 1996 WL 374186, at * 7 (SSA July 2, 1996)

(adjudicator may properly discount claimant's allegation of disability where "the level . . . of treatment is inconsistent with the level of complaints")).

With respect to the ALJ's finding that she could perform simple, unskilled work with "occasional" interaction with the general public, co-workers, or supervisors (Op. at 7, Page ID 53), plaintiff complains that "those limitations do not adequately address Plaintiff's panic attacks or problems with concentration and memory, all of which can cause her to be off-task for a significant time." (Plf. Brief at 16, Page ID 569). Plaintiff cites to nothing in the record; nor does she provide any analysis of how the ALJ purportedly erred. Accordingly, she has waived this issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

Moreover, plaintiff's claims regarding her mental impairments are belied by her own description of the panic attacks. She admitted that her panic attacks occurred only a "[c]ouple times a day" for "[m]aybe 10 minutes." (Page ID 90). The VE testified that such panic attacks would not preclude a person with plaintiff's background and RFC from a significant number of jobs in the national economy. (Page ID 109).

Finally, plaintiff's own actions and statements undermine her claim for disability. Plaintiff stopped working in 2007, not because of any impairment, but because she was laid off by her employer for "lack of work." (Page ID 334). She admitted that, following her lay-off, she was unable to find another job. (Page ID 327).

Plaintiff received unemployment benefits from the fourth quarter of 2009 through 2011. (Page ID 49, 195). Plaintiff admitted that, to receive those benefits, she repeatedly reported that she was looking for work. (Page ID 102). Moreover, during the process of seeking disability benefits, plaintiff was working as a babysitter, bringing a two-year-old toddler to her July 20, 2011, appointment with Dr. Saith. (*See* Page ID 420). All of these facts were properly considered by the ALJ in denying plaintiff's disability claim. *See Workman v. Commissioner*, 105 F. App'x 794, 801 (6th Cir. 2004); *Allen v. Apfel*, 3 F. App'x 254, 257 (6th Cir. 2001).

## Conclusion

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Respectfully submitted,

Date: January 21, 2015     /s/ Phillip J. Green
                           PHILLIP J. GREEN
                           United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)©; FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See*

*McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).